Davis, J.
(dissenting). I respectfully dissent. Civil Court’s finding that landlord waived its right to enforce the no-pet provision in tenant’s lease has ample support in the record and should be affirmed.
The testimony at trial established that tenants purchased the dog, a chow named Rocky, on or about September 13, 1996, *49 and immediately began walking him into and out of the building on a regular basis, several times a day. Two neighbors testified that from September 1996, they observed tenants (father and son) with the dog at various times of the day, entering or leaving the building through the front, back and/or side entrances, and around the building grounds as well. Both the neighbors and the tenants testified further that as early as September 1996, various building employees (security guards and maintenance workers) had seen the dog, and even petted it and/or spoken to tenants about it.
Landlord’s managing agent testified that he was not aware of the presence of the dog until November 1996, when he was notified by a Board member. The managing agent also testified that he does not live at the premises; does not have an office at the premises, although there is a maintenance department; has been at premises “maybe once” in the past two years; did not speak about the existence of dogs to either the security guards or maintenance workers; and did not make it a policy to visit the grounds to see who had dogs.
Landlord commenced this proceeding on February 10, 1997, which was within three months from the time the managing agent received notice of the presence of the dog from the Board member, but over four months after tenants began openly harboring the dog at the premises. After trial, the lower court found that the evidence was “overwhelming that from the first day respondents brought the dog home it was exposed to and seen by building personnel on a regular basis * * * Knowledge of the existence of respondent’s dog in mid September 1996 must be imputed to petitioner.” The court rejected as “not persuasive” landlord’s argument that security guards, janitors and porters at the subject building were merely independent contractors whose job description did not include informing landlord of the harboring of dogs in violation of the lease agreement.
It is well established that on a bench trial, the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence (Claridge Gardens v Menotti, 160 AD2d 544). Here, the evidence supports the trial court’s findings. The testimony of tenants and their witnesses, credited by the Trial Judge, established that landlord’s on-site employees knew of tenants’ open harboring of a dog for over four months prior to the commencement of this holdover proceeding. The dog was displayed on a daily *50 basis as it entered and exited the premises and building personnel saw the dog, touched it and spoke to tenants about it. Landlord is therefore deemed to have waived the “no-pet” covenant in the lease (Amalgamated Hous. Corp. v Rogers, NYLJ, Aug. 13, 1991, at 21, col 2 [App Term, 1st Dept]; Administrative Code of City of NY § 27-2009.1). It is irrelevant that landlord had no retaliatory or other bad-faith motive when it commenced this proceeding (Metropolitan Life Ins. Co. v Friedman, 205 AD2d 303).
The majority takes no issue with the trial court’s factual finding that the dog was harbored openly and notoriously since mid-September 1996. Instead, the majority holds that these tenants are not within the class sought to be protected by the Pet Law because they did not have the dog “for an extended period of time.” The majority also holds that it was error to impart knowledge of the pet to landlord from security personnel (who were independent contractors) or low-level maintenance personnel, neither of whom were landlord’s agents or had a duty to report the existence of a dog. It is my view, however, that today’s holding is erroneous as a matter of law and will frustrate enforcement of the Pet Law by permitting a landlord to insulate itself from the law’s waiver provision.
The Pet Law provides that where a pet is harbored openly and notoriously for “a period of three months or more” and “the owner or [its] agent has knowledge of this fact,” failure to “commence” a proceeding to enforce the no-pet provision “shall” be deemed a waiver of the right to do so (Administrative Code § 27-2009.1 [b]; emphasis added).
The majority erroneously holds that the Pet Law only protects tenants who harbor a pet “for an extended period of time.” Irrespective of any language in the Legislative Declaration referring to “an extended period of time,” the Pet Law specifies in clear and unambiguous language that a waiver shall occur after a tenant harbors a pet “for a period of three months or more.” The provisions of the statute and not the Legislative Declarations are determinative (McKinney’s Cons Laws of NY, Book 1, Statutes § 122; Lederman v Board of Educ., 276 App Div 527, affd 301 NY 476). Since tenants openly harbored the dog for over three months, they are within the class sought to be protected by the law.
Moreover, to give the waiver provisions of the Pet Law any practical effect, knowledge of the pet would have to be imparted to the landlord from those employees who work for the landlord and are in and around the building on a regular basis *51 (Mamaroneck Gardens Realty Partners v Nye, NYLJ, Feb. 7, 1992, at 26, col 1 [App Term, 9th & 10th Jud Dists]). This would include, as in this case, general maintenance workers, and security personnel, either independent contractors or in landlord’s direct employ. Particularly where, as here, there is no owner or managing agent even occasionally at the premises, a landlord who fails to instruct on-site employees to report open and notorious violations of a no-pet rule, should not be heard to complain that it did not receive notice of a particular breach. Convenient indifference should not be confused with pardonable ignorance.
The majority’s holding would permit an absentee landlord, with no managing agent regularly at the premises, to indefinitely toll the three-month period within which it must commence an action to enforce the no-pet rule by simply claiming that building personnel had no duty to report the existence of pets. Such a holding is contrary to the plain meaning of the statute and its broad remedial purpose (see, Megalopolis Prop. Assn. v Buvron, 110 AD2d 232).
Parness, P. J., and McCooe, J., concur; Davis, J., dissents in a separate memorandum.